## RIVES, Adm'r. *v.* TOULMIN.

1. Debt on bond executed by defendant, payable to plaintiff as administrator of G. M. R. deceased. Defendant craved oyer of the condition which was set out, and pleaded several special pleas, each averring performance. The condition recited, that defendant, said G. M. R., and two others had become securities for one M. as receiver in a chancery suit, that M. had made default, and plaintiff, as administrator of G. M. R., had paid a certain amount on account of said default, and to secure the same had taken from M. his six promissory notes, (which are described,) with a mortgage on his real and personal estate. It then concludes, "Now, in the event the said M. shall fail to pay said notes, and the mortgaged property prove insufficient to pay the same on a sale thereof, and the said W. H. R. (plaintiff,) be unable to collect said notes of said M. at law, then shall I pay said W. H. R. one fourth of the final amount of loss he may sustain by reason of his paying up said default as aforesaid, then this obligation to be void," &c. The plaintiff replied the mortgage, with its objects and stipulations, and his sale of the property under a power contained in the mortgage, the proceeds to be applied to the aggregate sums mentioned in the notes; also, that he commenced suit against M. *to recover the aggregate amount of said notes, as he was authorized to do under the terms and stipulations of the mortgage,* and recovered judgment on which an execution was regularly issued and returned "no property found," and that said notes remain unpaid except to the extent of the money arising from said sale. Defendant craved oyer of the mortgage, and demurred to the replication. The mortgage recites all the facts which are recited in the condition of the bond, and provides that in the event said M. should fail to pay each of said notes at maturity, or within ninety days thereafter, then all of said notes should be forthwith due and payable, and plaintiff might forthwith commence suit at law, or in chancery, "for the recovery of the whole debt covered by said six notes." And in the event of such default, the mortgage contained a power of sale, the proceeds to be applied to the payment of said debt and interest, and the balance, if any, to be paid to said M. The notes, bond and mortgage were all executed on the same day. *It was held,*

   1. That the replication was substantially good.
   2. That the mortgage is to be taken as part of the subject matter of the contract shown by the condition of the bond, and as part of the condition in effect.

Error to the Circuit Court of Mobile. Tried before the Hon. John Bragg.

Rives, adm'r, v. Toulmin.

THE plaintiff as administrator of George M. Rives, deceased, declared upon a writing obligatory, bearing date the —— day of ——, 1845, but averred to have been executed on the 1st day of September, 1845, whereby the defendant acknowledged himself to be held and firmly bound unto the plaintiff in the sum of twelve thousand dollars, to be paid to him.

The defendant craved oyer of the condition which was set out, and filed five pleas, each concluding with an averment of performance. The condition was in these words: "The condition of this obligation is such, that whereas I, the said Theophilus L. Toulmin, George M. Rives, deceased, John K. Collins and Jacob Baptiste, became securities of William Magee, as receiver in a suit in chancery, in which the trustees of the Bank of the United States in Pennsylvania are plaintiffs, and the heirs and representatives of Henry Hitchcock, deceased, are defendants, and said William Magee has made default as such receiver, and said William H. Rives, as the administrator of George M. Rives, has paid on account of such default the sum of $32,722 54, and with the view to secure the same from the said Magee, has taken his notes with a mortgage on his personal and real estate, one of said notes being for $5,671 90, dated the 1st of September, 1845, due the 1st of September, 1846, bearing interest from the date; the five others of said notes being respectively for the same amounts, all bearing interest from the date, one due September, 1847, another September, 1848, another September, 1849, another September, 1850, and the last September, 1851; now, in the event the said William Magee shall fail to pay said notes, and the mortgaged property prove insufficient to pay the same, on a sale thereof, and the said William H. Rives unable to collect said notes of said Magee at law, then shall I, the said T. L. Toulmin, pay said William H. Rives one fourth of the final amount of loss he may sustain by reason of his paying up said default as aforesaid, then this obligation to be void, otherwise to remain in full force and effect."

The mortgage was also set out on oyer. Besides what is stated in the condition of the bond, the mortgage contains a power of sale, after mentioning the said notes, which it was intended to secure, and stating the aggregate amount to be $34,031 40, and that in the event said Magee should fail to pay each of said notes at maturity, or within ninety days thereafter, then all of

said notes should be forthwith due and payable, and the ·plaintiff might· forthwith·commence suit at law or in chancery "for the recovery of the whole or entire debt covered by said six promissory notes." And in the event of such default, there was a power in the mortgage to the plaintiff to sell the property mortgaged, the proceeds, after paying expenses, to be applied to the payment of said debt and interest, and the residue, if any, to be paid to said Magee.

The first plea averred performance.

The second alleged a sale of the property by the plaintiff, and that he thereby raised money to pay the said first notes, and that the plaintiff had not, since the maturity of the third note, commenced any suit at law against Magee for the collection of that note, nor made any effort to collect the same, nor been unable to do so.

The third plea alleges a default in the payment of the first note, and a sale, for the purpose of paying the same, of the property mortgaged, for the sum of $12,000; that after the payment of the two first notes, the plaintiff failed to proceed at law against Magee for the collection of the notes, but has refused to do so.

The fourth plea alleges that the plaintiff has not sold the property mortgaged, nor attempted to collect the notes.

The fifth plea alleges, that after maturity of the first note, the plaintiff sold the property mortgaged for the sum of $11,231 18; also, that at the Spring Term of the Mobile Circuit Court, 1847, he commenced suit against Magee upon the original consideration of said notes, and at the Spring Term, 1848, recovered judgment for $41,245 90 and the costs; that· an execution issued from this judgment and was returned "no property found;" also, that no other suit at law had been commenced against Magee, on account of said debt, and that the plaintiff had made no other attempt to collect the same, nor shown his inability to do so.

The plaintiff replied the mortgage, with its objects and stipulations; also, his sale of the property under the same, after default, for the sum of $11,221 18, besides the expenses, to be applied to the aggregate sums mentioned in the notes; also, that he commenced suit against Magee, to recover the aggregate amount of all of said notes, as he was authorized to do under

the terms and stipulations contained in said deed of mortgage, and recovered judgment, in May, 1848, in the Circuit Court of Mobile, for the sum of $41,245 98, besides costs; also that an execution was regularly issued and returned "no property found;" also, that said sums remain unpaid, except to the extent of the money arising from the sale.

The defendant demurred to the replication, and the demurrer was sustained, which is now assigned as error.

ELMORE & YANCEY, for plaintiffs in error:

1. All the pleas are, in substance and effect, pleas of performance, and the replication is an assignment of the breach of the condition.—1 Chitty on Pl. 585.

2. The replication sustains the declaration, and after the condition of Toulmin's bond is set forth on oyer, discloses the only state of facts on which the defendant was liable.

3. All these instruments are made at the same time, and refer to each other, and relate to the same matters, and constitute one transaction, and are to be determined as if embodied in the same instrument; and Toulmin was bound by the agreement that on default of Magee, &c., the plaintiff might sue him at once, on all the notes.—Sewall v. Henry, 9 Ala. 24; Elliott v. McClelland, 17 ib. 206; Dillingham v. Estis, 3 Dana 21.

4. The two first notes were due when Rives commenced his suit against Magee, and a balance due on them, even after applying to them the whole of the proceeds of the sale of the mortgaged property. These two notes were part of the foundation of the judgment, and to the extent of the balance due on these two notes, Toulmin was unquestionably liable.

JOHN A. CAMPBELL, contra:

1. The liability of the defendant arose upon the bond on the occurrence of three conditions. 1. That the mortgaged property must be exhausted. 2. Magee must have failed to pay the notes. 3. That the notes could not be collected at law.

The bond refers to the debt simply as it appears from the notes. It does not refer to the debt as indicated by notes and covenants in a mortgage. There is no evidence in the bond, nor is there any averment in the pleadings, that the defendant had

any notice of those covenants. The credit given to Toulmin is to extend to 1851. He is only to pay the amount of loss that should be finally ascertained. He is to have but one settlement with Rives. That is to be made after the loss was finally ascertained.—19 John. 69; 1 Wend. 457; 4 Cowen 173; 6 Cowen 624; 11 Wend. 105.

2. The suit upon the whole debt avoided the obligation.—2 Keen 638; E. C. L. R. 64.

PARSONS, J.—The notes were payable at certain times, as they originally were, the last one maturing September, 1851. The notes and the bond were made the 1st of September, 1845. The day when the bond was executed is averred in the declaration, and the date of the notes is stated in the mortgage. The mortgage is dated September, 1845, but it must have been executed on the first of that month, because it is mentioned in the condition of the bond. For the sake of convenience, we will assume for the present, but endeavor to prove in the end, that the mortgage is to be taken as parcel of the subject matter of the contract, which is shown by the condition of the bond, and, in fact, as part of the condition, in effect. The plaintiff's right of action on the bond, both as to time and amount, was subject to three conditions precedent, specified by the condition itself, to wit : that Magee should fail to pay said notes; that the mortgaged property should prove insufficient to pay the same on a sale thereof; and lastly, that the plaintiff should be unable "to collect said notes of said Magee, at law." It appears by the replication, that Magee failed to pay, and that the mortgaged property was sold, and was insufficient. It also appears by the replication, that the plaintiff brought suit against Magee, in the Circuit Court of Mobile, to recover the aggregate amount of all of said notes, and, in May, 1848, recovered judgment for the sum of $41,245 98, and the costs, and that an execution was regularly issued and returned "no property found." The case must turn upon the question, whether or not this suit was according to the contract of the parties, as it appears by the condition of the bond? They intended either that a suit or suits should be brought on the notes, without regard to any thing contained in the mortgage, by which the time of payment of the money mentioned in the notes was changed, or they intended that a suit, if

Rives, adm'r, v. Toulmin.

necessary, should be brought for the aggregate amount of the notes, under a stipulation contained in the mortgage, which is as follows : " And should it so happen that any of said notes, or any part thereof, shall remain unpaid for the space of ninety days after the same shall become due, and payable, then and in that event, each and all of said notes shall become due and payable, notwithstanding some of them shall have a longer time to run before maturity upon their face ;. and said William H. Rives may forthwith commence suit at law, or in chancery, for the recovery of the whole or entire debt covered by said six promissory notes." All deeds are to operate according to the intention of the parties, unless that is unlawful.—Goodtitle v. Bailey, 2 Cowp. R. 597. And it is proper to look to the subject matter of a contract, and the inducements that led to it, for the purpose of ascertaining what the parties intended.—Bates &. Hines v. The Bank of the State of Alabama, 2 Ala. 451. Now, the circumstances of the contract were these : that the plaintiff's intestate, and the defendant and others, were securities of Magee for a large amount, which the plaintiff had paid. To secure this, the plaintiff, as the intestate's administrator, took Magee's notes, payable at different times, and his mortgage on real and personal estate, to secure the payments, with a provision in the mortgage, that in the event of a default for ninety days after maturity of either of the notes, a suit might be brought for the entire debt. It follows that, according to the mortgage, the entire debt for which the notes were made was to become payable at the time when such default should happen. In view of this, and for the purpose of securing the defendant's share of the loss, he executed the bond. The language of the condition is, it is true, that Magee's failure " to pay the notes," and the insufficiency of the mortgaged property " to pay the same," and the inability of the plaintiff "to collect said notes of said Magee, at law," are the contingencies upon which the defendant was to pay " one fourth of the final amount of the loss." But if the language had been to pay the money mentioned in the notes, and to collect the money mentioned in the notes, the intention would have been the same. Either way, however, it is reasonably clear, we think, that the parties looked to a payment or collection of the notes, or of money mentioned in the notes, not according to the tenor and effect of the notes, but according to the provision of the mort-

gage.  The plaintiff's right of action for the whole, when any
default might occur, was plainly provided for by the mortgage.
It could not have been the intention or expectation of any of the
parties that the plaintiff might sue for the whole debt and re-
cover according to the mortgage, and afterwards, for the purpose
of reaching the defendant, have to sue again upon the notes.
Such unnecessary and unauthorized litigation, delay and ex-
pense, were intended, or it was intended that upon the contin-
gencies which have happened, one suit for the whole amount
should suffice, and this last is our opinion, and therefore, we
think the replication was substantially good, and that there was
error in sustaining the demurrer.  Upon this view of the case,
the authorities cited by the defendant's counsel do not apply.

2. It appears by the condition that the notes and mortgage
were in existence when the bond was executed, and it is to be
presumed that they were before the parties, for each of them
was recited in the condition and was part of the subject matter
of the contract, which is evidenced by the bond and its condition.
Some of the authorities upon this point are collected in 2 Cowen &
Hill's Notes, p. 517–518, (edition of 1850.)  It is there said that
where one writing refers to another, either tacitly or expressly,
both are to be construed together; and one may correct an erro-
neous description contained in another, or even vary, or add to,
as well as explain it.  And it is further said, that " two writings
executed at the same time, in relation to the same subject matter,
have, in many cases, been deemed one instrument, with a view
to the construction of either." In Jackson v. Parkhurst, (4
Wend. 374,) one deed referred to another, and the court said
the latter, by the reference, became part of the former; and in
Sewell v. Henry, (9 Ala. 30,) the then Chief Justice of this
Court made a similar observation, that " two writings, connected
by a reference of one to the other, may be considered and con-
strued as parts of an entire transaction, and as if they were em-
bodied in one instrument."  In Habergham v. Vincent, (2 Ves.,
jr., 203,) the Lord Chancellor observed : " I cannot conceive but
that a will may be good by reference to some other paper, no
matter what.  When the thing referred to is ascertained, it is as
much a part of the will, as if it was within the sheets.  I re-
member one case, where a woman devised her estate to the same
uses to which her husband had devised by his will.  The conse-

quence was, his will became hers. Her will passed her estate, but to know what was done, it was necessary to refer to the other will." In the same case, Mr. Justice Wilson, who sat with the Lord Chancellor, said: "I believe it is true, and I have found no case to the contrary, that if a testator, in his will, refers expressly to any paper already written, and has so described it that there can be no doubt of the identity, and the will is executed in the presence of three witnesses, that paper makes part of the will, whether executed or not; and such reference is the same as if he had incorporated it, because words of relation have a stronger operation than any other; as Lord Coke says in his comment on Littleton, when Littleton is speaking of the word 'heirs' being necessary to raise an estate of inheritance, Lord Coke makes this exception: if A enfeoff B and his heirs, and B enfeoffs A in as full and ample a manner as A has enfeoffed him, that will give the inheritance without the word 'heirs,' and it shall have effect by relation." This principle, therefore, is not confined to wills or any other particular instrument, but in reason and justice may apply to all—to deeds of feoffment and other instruments.

The husband's will, in the case mentioned by the Lord Chancellor, became part of the wife's, not in consequence of the relation between them, but because she had referred to his.

In the case before us, the mortgage was part of the subject of the contract. The amount of Mr. Toulmin's liability was to depend on it, and the contract gave him an interest in it. It was so fully mentioned in the condition of his bond, that it could be readily identified, and in fact, its identity is not controverted. And not only the amount, but, as we think, the time of his liability, was to depend upon it, or rather, upon a suit and other proceedings authorized by it. As to the suit upon the event of which his liability, in respect of time and amount, was to become fixed, we only limit the general language of the condition of the bond, by the more specific language of the mortgage, which we take as part of the condition. We do this to carry out what we think was the plain intention of the parties.

The judgment is reversed and the cause remanded.

DARGAN, C. J., not sitting.